UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSHUA PARK,**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**JOHN DOE TSIAVOS 1-10, et al.**<br><br>   **Defendants.** | Civ. No. 2:13-00616 (WJM)<br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.:

   Plaintiff Joshua Park brings this tort action against Cho Dae Community Church ("the Church"), Dimitri Tsiavos and his parents, Elizabeth and Leonidas Tsiavos, and five John Doe Defendants (collectively, "Defendants"). Plaintiff alleges that he was playing basketball in the Church's gymnasium against Tsiavos and the John Doe Defendants, when they made racial slurs against him and assaulted him, dislocating his jaw and causing him to incur medical expenses of at least $79,000. Plaintiff raises a claim of premises liability against the Church; a claim of conspiracy to interfere with his civil rights pursuant to 42 U.S.C. § 1985(3) against Dimitri Tsiavos and the John Does; claims of negligence, assault, and battery against Dimitri Tsiavos; and a negligent supervision claim against Tsiavos's parents.

   The Church moves for summary judgment on the grounds that the Church is immune from suit; Dimitri Tsiavos moves for partial summary judgment as to Plaintiff's §1985 claim. There was no oral argument.[1] Fed. R. Civ. P. 78(b). The Church's motion for summary judgment is **GRANTED** because it is immune from suit under New Jersey's Charitable Immunity Act. Tsiavos's motion for summary judgment is **GRANTED** because Plaintiff has not alleged a violation of a constitutionally-protected right as required to state a claim under § 1985. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims; accordingly, Plaintiff's Complaint is **DISMISSED without prejudice to refiling in state court**.

---

[1] The parties' request that the Court hold oral argument on this motion is denied. *See Cope v. Soc. Sec. Admin.*, 532 F. App'x 58, 60 (3d Cir. 2013) ("The District Court has discretion as to whether to hold a hearing.").

1

## I.      BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff's parents were members of the Church at the time of the incident, and Plaintiff had attended Church services there "a couple of times." ECF doc. 72, Ex. B (Pl. Dep.) at 37:16-25. Plaintiff and his friends were "regulars" at the Church "to play basketball," and played basketball there "at least once a week." *Id.* at 39:17-38:15; 41:9-16. Anyone, whether they were a member of the Church or not, was allowed to play basketball at the Church. *Id.* at 42:14-18.

In June 2012, Plaintiff was playing basketball with a group of friends inside the Church gymnasium. ECF doc. 39, ¶ 9. Another group of players arrived, and eventually the two groups agreed to play a five-on-five game of basketball against each other. *Id.*, ¶¶ 9-11. During the course of the game, the parties engaged in "trash talking" and fouling of other players. ECF doc. 39, Ex. B; doc. 81 at 3-4. Plaintiff alleges that Dimitri Tsiavos kicked him in the chest area, and commented that because Plaintiff is Asian, he should somehow be able to fend off his kicks. ECF doc. 39 at ¶ 11. Then, without provocation, Tsiavos launched "a severe right hook upon the left jaw of [P]laintiff." *Id.* Plaintiff alleges that his jaw was dislocated and he incurred approximately $79,000 or more in medical expenses due to the incident. *Id.* at ¶ 12. According to Tsiavos, Plaintiff called the opposing team "jerks," Tsiavos replied, "let's go, you don't know what you are getting into," and Plaintiff inquired as to whether Tsiavos knew Kung-Fu. ECF doc. 81 at 3-4. Tsiavos replied to this inquiry by stating, "No, you are the Asian ones." *Id.*

Following the incident, Plaintiff's counsel sent letters to the Norwood Police Department and the Bergen County Prosecutor's Office requesting that Tsiavos and the John Doe Defendants be charged with aggravated assault and bias crimes under New Jersey law because they attacked Plaintiff based on his Asian status. *Id.* at ¶ 28. Tsiavos was charged with aggravated assault and, after trial, the trial judge found him not guilty. ECF doc. 81 at Ex. C. This action followed.

### A.  The Instant Action

In July 2013, Plaintiff filed his first amended Complaint against Defendants on the basis of diversity jurisdiction alone. ECF doc. 20. The Court conducted jurisdictional discovery, ECF doc. 24, and Defendants subsequently moved to dismiss the Complaint for lack of jurisdiction, ECF doc. 27. Plaintiff cross-moved to amend his complaint, explaining that amendment to add a federal claim (the § 1985 claim) was justified to "ensure that jurisdiction is proper," but also including arguments and exhibits to support his claim that diversity jurisdiction existed. ECF doc. 31. Plaintiff's motion to amend was granted, and in April 2014, he filed his second amended Complaint, which is now the operative one. ECF doc. 39.

Plaintiff raises the following claims: (1) premises liability against the Church; (2) conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(3) against Dimitri Tsiavos and the John Doe Defendants; (3) negligence, assault, and battery against Dimitri Tsiavos; and (4) negligent supervision against Tsiavos's parents. *Id.*

The Church moves for summary judgment as to Plaintiff's premises liability claim against it, arguing that it is immune from suit under the New Jersey Charitable Immunity and, in any case, was not negligent. ECF doc. 72. Tsiavos moves for partial summary judgment as to Plaintiff's § 1985 claim because the circumstances alleged by Plaintiff do not constitute discrimination under § 1985. ECF doc. 81. Plaintiff opposes both motions, and moves to strike Defendants' papers for failure to comply with New Jersey Local Rule 56.1(a). ECF docs. 77; 82.

## II.   Legal Standard

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III.   DISCUSSION

### A. Plaintiff's Motion to Strike Defendants' Summary Judgment Motions

Plaintiff moves to strike both Defendants' motions for summary judgment on the grounds that neither Defendant submitted a statement of material facts in accordance with New Jersey Local Civil Rule 56.1(a). Plaintiff's request is denied.

Rule 56.1 requires that, on motions for summary judgment, both the moving and nonmoving parties shall provide the Court with a statement of all material facts not in dispute, set forth in "separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A motion unaccompanied by "a statement of material facts not in dispute shall be dismissed." *Id.*; *see also Kee v. Camden County,* No. 04–0842, 2007 WL 1038828, at * 4 (D.N.J. March 30, 2007) ("A moving party's failure to comply with Rule 56.1 is itself sufficient to deny its motion"). However, a party's noncompliance with the Rule may be excused in certain

3

instances. *See Park v. Sec'y U.S. Dep't of Veterans Affairs*, 594 F. App'x 747, 751 (3d Cir. 2014) (excusing non-compliance with technical requirements of Rule 56.1 because movant "substantially complied" with the Rule); *Vibra-Tech Engineers, Inc. v. Kavalek*, No. 08-2646, 2011 WL 111417, at *2-3 (D.N.J. Jan. 13, 2011) (excusing movant's failure to comply with the Rule where non-moving party also failed to comply).

Here, the Church failed to submit a separate Rule 56.1 statement, but included a numbered Statement of Facts within its motion, with citations to the affidavits and other documents. ECF 72, 2-4. The Court finds the Church has substantially complied with Rule 56.1. *See Park*, 594 F. App'x at 751 (affirming district court's "decision not to require a separate Rule 56.1 statement" where Defendant "substantially complied with Rule 56.1 via its Statement of Relevant Facts.").

Tsiavos also failed to submit a Rule 56.1 statement with his summary judgment motion. But despite Plaintiff's criticism of Tsiavos for this noncompliance, Plaintiff failed to submit his own Rule 56.1 statement in opposition to Tsiavos's motion, in accordance with the Rule. *See Ramziddin v. Speziale,* No. 07–5303, 2009 WL 4827492, at * 1 (D.N.J. Dec. 10, 2009) (stating that both parties must comply with Rule 56.1). Under these circumstances, the Court will not deny Tsiavos's motions on procedural grounds. *See Vibra-Tech*, 2011 WL 111417 at *2-3; *see also Khater v. Puzino Dairy, Inc.*, No. 14-4618, 2015 WL 4773125, at *3 (D.N.J. Aug. 12, 2015) ("The Third Circuit . . . prefers that cases be decided on their merits.") (internal citation omitted).

### B. The Church's Motion Summary Judgment

The Church argues that summary judgment should be granted in its favor because it is immune to suit pursuant to the New Jersey Charitable Immunity Act. The Court agrees.

New Jersey's Charitable Immunity Act bars negligence[2] actions against nonprofit corporations organized for religious, charitable, educational or hospital purposes. *See* N.J. Stat. Ann. § 2A:53A-7(a). To fall within the Act, a defendant must demonstrate that: (1) it is a charitable organization that is organized exclusively for religious, charitable, educational, or hospital purposes; and (2) the plaintiff is a beneficiary, "to whatever degree" of its services. *See* N.J. Stat. Ann. § 2A:53A-7(a)-(b); *Hottenstein v. City of Sea Isle City*, 981 F. Supp. 2d 292, 294 (D.N.J. 2013). The Legislature has instructed that the definition of a "beneficiary" should be "liberally construed so as to afford immunity to a qualifying entity 'in furtherance of the public policy for the protection of [such entities.]'" *Hottenstein*, 981 F. Supp. 2d at 294 (internal citations omitted). For a Court to find that an individual is not a beneficiary, the individual must be wholly "unconcerned in and

---

[2] Under New Jersey law, premises liability is "a subset of general negligence law." *Peguero v. Tau Kappa Epsilon*, 439 N.J. Super. 77, 88 (App. Div. 2015).

4

unrelated to" the benefactions of the entity. *See Ryan v. Holy Trinity Evangelical Lutheran Church*, 815 A.2d 419, 431 (N.J. 2003) (citing N.J. Stat. Ann. § 2A:53A-7(b)); *see also Kostera v. Bacharach Inst. for Rehab*., No. A-1991-13T4, 2015 WL 4643642, at *5 (N.J. Super. Ct. App. Div. Aug. 6, 2015) ("plaintiff was a beneficiary if on the day in question she was a 'direct recipient,' 'to whatever degree,' of the 'good work' that [the Church] was advancing at the time. . . .") (internal citations omitted).

Plaintiff concedes that the Church is a charitable organization, but disputes that he was a Church beneficiary under the Act. The Court disagrees: Plaintiff is no "stranger" to the Church, as is required to defeat immunity. *See O'Connell v. State*, 795 A.2d 857, 864-65 (N.J. 2002) (describing the Act's "'beneficiary/stranger' distinction"). Plaintiff's parents were members of the Church; Plaintiff had attended the Church's religious services in the past; and Plaintiff played basketball on a weekly basis in the Church's gymnasium. ECF doc. 72, Ex. B. New Jersey courts have concluded that similar contacts are sufficient to confer beneficiary status upon an individual. For example, in *Bieker v. Community House of Moorestown*, the New Jersey Supreme Court held that a child who accompanied his father to a basketball game in a nonprofit organization's gymnasium "was plainly a recipient of [organization's] 'benefactions,' even if only as a companion of his father and a spectator at his father's basketball game." *Bieker*, 777 A.2d 37, 45 (N.J. 2001) (internal citations omitted); *see also Pomeroy v. Little League Baseball of Collingswood,* 362 A.2d 39, 41 (N.J. Super. Ct. App. Div. 1976) (holding that non-profit baseball league was immune for injuries sustained by spectator at game).

And, a Plaintiff need not be a beneficiary of a Church's religious works to fall within the Act. In *Ryan v. Holy Trinity Evangelical Lutheran Church*, the Court held that a woman attending a nonprofit group's meeting at a church was a beneficiary of the church, explaining that "[b]y supporting social outreach groups that enriched the life of the community at large, [the Church] fell well within the modern view, now sixty years old, that the good works of churches are not limited to parochial concerns." 815 A.2d at 430; *see also Loder v. St. Thomas Greek Orthodox Church*, 685 A.2d 20, 23 (N.J. Super. Ct. App. Div. 1996) (holding that non-member who paid a fee to attend church food festival was beneficiary of church's charitable works). Similarly, in *Anasiewicz v. Sacred Heart Church,* the court held that a non-parishioner wedding guest was the beneficiary of the charitable benefactions of a Church. *See Anasiewicz*, 181 A.2d 787, 790-91 (N.J. Super. Ct. App. Div. 1962); *see also Peacock v. Burlington County Historical Society,* 230 A.2d 513, 515 (N.J. Super. Ct. App. Div. 1967) (holding that plaintiff's casual viewing of exhibits in historical society building while waiting for her husband was sufficient to characterize her as a beneficiary of society's charitable works).

Plaintiff contends that he should not be deemed a beneficiary because he was neither a member of nor an invitee to the Church. But these facts are not dispositive. New Jersey case law does not require that a church beneficiary be a member of the congregation: to the contrary, non-parishioners are deemed beneficiaries under the law. *See Loder*, 685 A.2d

at 23; *Anasiewicz*, 181 A.2d at 790-91.  And, in his brief, Plaintiff concedes that "no Church policy for the use of the gym is implemented."  Br. 11-12.  Thus, by Plaintiff's own account, the Church's gymnasium was open to the public and not limited to invitees.  *Cf., Ryan*, 815 A.2d at 430 (2003) ("the good works of churches are not limited to parochial concerns.").  Because Plaintiff was a "direct recipient" of the Church's "good works" at the time of his injury, *see Kostera*, 2015 WL 4643642, at *5, the Court finds that Plaintiff was a beneficiary for purposes of the Act.  The Court therefore does not reach the issue of whether the Church was negligent and **GRANTS** the Church's summary judgment motion.

### C. Tsiavos's Motion for Summary Judgment

Dimitri Tsiavos claims that he is entitled to partial summary judgment as to the § 1985 claim against him.[3]  The Court agrees that the claim should be dismissed, albeit on different grounds than those set forth in Tsiavos's motion.

To survive summary judgment on a 42 U.S.C. § 1985(3) claim, the plaintiff must allege "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons ... [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997); *Ridgewood Board of Education v. N.E.,* 172 F.3d 238, 253-54 (3d Cir.1999).

"Despite its application to private conspiracies, § 1985(3) was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'"  *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (internal citations omitted); *see also Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993) (holding that intentionally depriving women from receiving abortion services did not fall under § 1985(3)).  To date, the Supreme Court has only recognized two rights that are protected against private encroachment: "the right to be free from involuntary servitude and the right to interstate travel."  *Brown v. Philip Morris Inc.,* 250 F.3d 789, 805 (3d Cir. 2001).

Even assuming that all of the facts alleged in Plaintiff's Complaint are true, *i.e.*, that Defendant Tsiavos and the John Doe Defendants conspired to assault Plaintiff in the Church gymnasium because of his Asian race, Plaintiff has not alleged a violation of a constitutionally protected right that falls under § 1985(3).  *See Brown,* 250 F.3d at 805; *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 230-31 (3d Cir. 2007) (holding that Plaintiff's "substantive due process rights to bodily integrity" did not fall within § 1985(3)); *Shine v. TD Bank Fin. Grp.*, No. CIV 09-4377, 2010 WL 2771773, at *6 (D.N.J. July 12, 2010) (holding that Plaintiff's complaint "fails for the simple reason

---

[3] Although Defendant's motion indicates that he seeks summary judgment on behalf of all Defendants Tsiavos on all claims, his brief only argues for summary judgment regarding the conspiracy claim.  Accordingly, Tsiavos's motion is treated by the Court as a motion for partial summary judgment.

that Plaintiff has not alleged any colorable violation of his right to be free from involuntary servitude or the right to interstate travel"). Accordingly, judgment as a matter of law as to Plaintiff's conspiracy claim is **GRANTED** in favor of Tsiavos.

### D. Plaintiff's Remaining Claims

The Court may address subject matter jurisdiction *sua sponte* at any time. *See Kontrick v. Ryan,* 540 U.S. 443, 455 (2004). Here, the Court has dismissed Plaintiff's only claim arising under federal law, depriving the Court of original jurisdiction under 28 U.S.C. § 1331. As described below, the Court has determined that diversity jurisdiction does not exist under 28 U.S.C. § 1332(a). Because Plaintiff's remaining claims arise under state law, the Court will refrain from exercising supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

#### i. Diversity Jurisdiction[4]

For purposes of diversity jurisdiction, citizenship is synonymous with domicile, and "the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Vlandis v. Kline,* 412 U.S. 441, 454 (1973). In determining an individual's domicile, a court considers several factors, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *Krasnov v. Dinan,* 465 F.2d 1298, 1301 (3d Cir. 1972) (internal quotation omitted). "Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006). "[A] domicile once acquired is presumed to continue until it is shown to have been changed." *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011) (internal quotations omitted). A party claiming to have a new domicile must: (1) "rebut the presumption in favor of an established domicile"; and (2) prove by a preponderance of the evidence that "a change of domicile occurred, creating diversity of citizenship." *McCann*, 458 F.3d at 288-89.

In this case, Defendants are all New Jersey citizens. Plaintiff alleges that diversity jurisdiction exists because he has changed his domicile from New Jersey (his home state) to Syracuse, New York (where he is currently enrolled in college). But, applying to factors outlined in *Krasnov* and *McCann*, Plaintiff has neither rebutted the presumption in favor of New Jersey as his domicile, nor proved by a preponderance of evidence that he has changed his domicile to New York. Plaintiff is listed as a resident dependent in his parents' most recent New Jersey state tax returns. ECF doc. 27. Plaintiff renewed his New Jersey

---

[4] The Court relies upon the claims and exhibits submitted by the parties in connection with Defendants' first motion to dismiss the Complaint for lack of jurisdiction, ECF doc. 27, and Plaintiff's cross-motion to amend his Complaint, ECF doc. 31, for its jurisdictional determination.

driver's license as recently as January of 2013 (the same month this action was first filed), and has not obtained a New York driver's license. *Id*. In both the incident report and Plaintiff's recorded statement to the police made in connection with the underlying altercation, Plaintiff identified his parents' New Jersey home address as his residence. *Id*., Ex. C-D. Finally, he is not registered to vote in New York and has not paid taxes in New York. ECF doc. 27.

Plaintiff claims that, upon graduation, he "intends to pursue his career in marketing in New York City." ECF doc. 31-1, 7. But this singular statement is not enough to rebut the presumption in favor of New Jersey as his domicile, or demonstrate by a preponderance of the evidence that a change of domicile to New York has occurred. *See Scoggins v. Pollock,* 727 F.2d 1025 (11th Cir. 1984) (college student in school in South Carolina who "had not positively decided upon her residence after graduation" was a domiciliary of her home state, Georgia); *Bradley v. Zissimos,* 721 F. Supp. 738, 740 (E.D. Pa. 1989) ("It is generally presumed that a student who attends a university in a state other than the student's 'home' state intends to return 'home' upon completion of studies."). *Compare Alicea-Rivera v. SIMED,* 12 F. Supp. 2d 243, 246 (D. Puerto Rico 1998) (holding that although the college student had a driver's license, voter's registration, and part-time job in Ohio, he was still considered a citizen of Puerto Rico because Plaintiff did not own or rent any property, did not pay a telephone or utilities bill, did not have any post-graduate commitments in Ohio, or any job in Ohio that would indicate steps towards a permanent career), *with Doe v. Schwerzler*, No. CIV.A. 06-3529, 2008 WL 1781986, at *3 (D.N.J. Apr. 17, 2008) (Kentucky college student who had registered to vote in Kentucky; had a Kentucky driver's license and had surrendered her New Jersey driver's license; had an open bank account in Kentucky; and paid Kentucky state income taxes had established Kentucky as her new domicile). Accordingly, the Court finds no diversity of citizenship exists.

### ii.  Supplemental Jurisdiction Over State Law Claims

Because the Court no longer has original or diversity jurisdiction over the case, the Court will refrain from exercising supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367 provides that a district court may decline to exercise supplemental jurisdiction over a claim where:

1. the claim raises a novel or complex issue of state law,
2. the claim substantially predominates the claim or claims over which the district court has original jurisdiction
3. the district court has dismissed all claims over which it has original jurisdiction, or
4. in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Now that the Court has dismissed Plaintiff's federal claim, and Plaintiff has failed to establish diversity jurisdiction, all that remains from his complaint are his state law negligence, assault, and battery claims. Pursuant to § 1367, the Court deems it appropriate to **DISMISS** Plaintiff's state law claims **without prejudice to his right to refiling the claims in state court.**

## IV. CONCLUSION

For the above reasons, Defendants' motions for summary judgment are **GRANTED** and Plaintiff's Complaint is **DISMISSED without prejudice to refiling in state court**. An appropriate order follows.

/s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 29, 2016**